# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

DAVID L. WALLACE                                   PLAINTIFF/COUNTERDEFENDANT

V.                                                                        NO. 2:11-CV-235-DMB-JMV

CHASE BANK USA, N.A.                             DEFENDANT/COUNTERPLAINTIFF

## MEMORANDUM OPINION AND ORDER

This action arises from debt collection efforts by Defendant Chase Bank USA, N.A. ("Chase") to recover full payment on a credit card account held by Plaintiff David Wallace and his ex-wife. Plaintiff maintains that he is not liable for the entire balance because it includes a charge from a convenience check his ex-wife drafted on the account without his knowledge. After Chase attempted to collect payment from Plaintiff, he filed a complaint in the County Court of Desoto County, Mississippi, seeking an order enjoining Chase from further collection attempts and requiring removal of any default notations regarding the account from his credit report. Chase removed the action to this Court and filed a counterclaim against Plaintiff for recovery of the unpaid account balance and attorney's fees. Chase now seeks summary judgment on its counterclaim, arguing that Plaintiff is liable for the entire balance pursuant to the Cardmember Agreement he entered at the time the account was opened. Plaintiff argues that summary judgment should be denied because he did not receive any benefit from the check and, therefore, is not required to repay his ex-wife's debt. For the reasons below, the Court finds that the motion for summary judgment should be granted in part and denied in part at this time.

## I

While Plaintiff and his ex-wife were married, they held a joint revolving credit card account with Chase's predecessor-in-interest. Compl. [2] at 2; Pl.'s Deposition [44-9] at 9.

Plaintiff claims his ex-wife opened the account in both their names. Credit card statements were mailed to the marital residence, and Plaintiff made payments on the account from his and his ex-wife's joint checking account. Pl.'s Deposition [44-9] at 10-11, Exh. 1-2. They used the credit card throughout their marriage and after their divorce in February 2006. *See id*. at 9-10, 17-18; Judgment for Divorce [44-1]. Plaintiff's ex-wife later remarried, and her last name changed from Wallace to Mack. Pl.'s Deposition [44-9] at 19; Doc. [44-12]. Plaintiff stated during his deposition that he contacted Chase in July or August 2006 and attempted to cancel the card, but was advised that the account could not be closed at that time because it had an outstanding balance of approximately $98.00. Pl.'s Deposition [44-9] at 10. Plaintiff claims he was advised that once the balance was paid, he would receive confirmation from Chase of the closed account. *Id*. Plaintiff further claims he paid the account in full, but never received confirmation. *Id*. He did not follow up with Chase regarding closing the account, nor did he use the credit card after 2006. *Id*.

On July 9, 2008, Plaintiff's ex-wife drafted a convenience check[1] made payable to herself for $32,700.00 on the Chase credit card account. Doc. [44-3]. She signed the check under her former last name "Wallace," although her name had already changed to "Mack" at that time. *Id*.; Pl.'s Deposition [44-9] at 19. On November 17, 2008, she executed a "Request to Accept Sole Responsibility" form for the Chase credit card account. Doc. [44-4]. Although Plaintiff's signature appears on the form, he disputes signing it[2] and suggests that his ex-wife forged his signature and submitted the form to Chase. Pl.'s Deposition [31-9] at 16. On March 20, 2009,

---

[1] According to Plaintiff, Chase periodically mailed convenience checks to the marital residence, and he would "wad them up and throw them away." Pl.'s Deposition [44-9] at 20.

[2] Plaintiff's purported signature appears at the bottom of the form under the section stating: "I am a liable party on the above account and agree that the account may become the sole responsibility of the above party. If approved, my name will be removed from the account." Doc. [44-4].

Plaintiff's ex-wife executed a second "Request to Accept Sole Responsibility" form. Doc. [44-5]. Plaintiff's purported signature appears at the bottom of the second form, and he disputes signing that form as well. Pl.'s Deposition [44-9] at 16. By sworn affidavit, Plaintiff's ex-wife stated that Plaintiff signed both Requests to Accept Sole Responsibility, and she had not signed Plaintiff's name on any documents since their divorce in February 2006. Doc. [44-12]. Chase did not permit Plaintiff's ex-wife to accept sole responsibility for the account. *See* Def.'s Decl. [44-14] at 1-2.

The record indicates Plaintiff's ex-wife paid approximately $5,166.00 on the Chase account from September 2008 until March 2009. Pl.'s Deposition [44-9] at Exh. 1. The account does not reflect any other account activity during that time. *Id*. On March 27, 2009, Plaintiff's ex-wife filed a Chapter 7 voluntary petition in the United States Bankruptcy Court for the Northern District of Mississippi. *See In re Mack,* No. 09-11551-DWH (Bankr. N.D. Miss. 2009); Doc. [44-7]. On July 8, 2009, she was granted a discharge. Doc. [44-7].

Plaintiff claims he discovered the charge for the convenience check in March or May of 2009, when his credit was reviewed by the dealership where he attempted to purchase a vehicle. Compl. [2] at 2; Pl.'s Deposition [44-9] at 11. After discovering the check had been cashed, Plaintiff contacted a lawyer and asked his ex-wife to repay the debt. Pl.'s Deposition [44-9] at 12. By letter dated June 10, 2009, Plaintiff's attorney demanded confirmation of the debt from Chase. Pl.'s Deposition [44-9] at Exh. 5. On October 23, 2009, Chase advised Plaintiff that it no longer had his original credit card application on file because the application was more than seven (7) years old. Pl.'s Deposition [44-10] at Exh. 17. On November 9, 2009, Chase sent Plaintiff a copy of the convenience check. *Id*. at Exh. 18. By letter dated November 18, 2009, Chase acknowledged receipt of Plaintiff's liability dispute and requested that he execute an

"Affirmation of Fact" form if he believed the account was fraudulent or an "Acceptance of Liability" form if he believed the account was valid. *Id*. at Exh. 19. Plaintiff did not return either form to Chase. Pl.'s Deposition [44-9] at 20.

On December 9, 2009, Plaintiff filed a fraud report with the Southaven Police Department regarding the convenience check. Doc. [44-13] at 2-7. The Southaven Police Department later concluded that Plaintiff's fraud allegations were unfounded and closed its investigation of the matter. *See id*. at 2.

On October 24, 2011, Plaintiff filed a complaint for declaratory judgment against Chase and Resurgent Capital Services, LP ("Resurgent"),[3] in the County Court of Desoto County, Mississippi. Plaintiff asserts that he did not receive any benefit from the convenience check cashed by his ex-wife and he did not obligate himself to make payments on the debt. Compl. [2] at 2. In addition, he asserts that the false reporting on his credit has caused him to suffer substantial hardship in his part ownership of a small appliance repair business. *Id.* at 3. He seeks attorney's fees and removal of any debt reporting on the Chase account. *Id.* at 3-4.

On December 5, 2011, Chase removed the case to this Court pursuant to 28 U.S.C. § 1446, asserting that Plaintiff's claims arise under or are completely preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681-1681x; and that federal diversity exists over the complaint. *See* Notice of Removal [1] at 2-4. That same day, Chase filed a counterclaim against Plaintiff for breach of the Cardmember Agreement he entered at the time the account was opened. *See* Def.'s Answer [4]. Chase seeks payment for the $30,063.76 remaining balance on the account, $10,021.25 in attorney's fees, and costs. *Id.*; Mot. [44]. On April 20, 2012, Plaintiff voluntarily dismissed Resurgent from the case. Pl.'s Stipulation [23].

---

[3] In the complaint, Plaintiff alleges that Resurgent Capital Services, LP, is the third-party management agency for LVNV Funding, the alleged successor-in-interest to the account at issue in this case. Compl. [2] at 1.

On August 2, 2012, Chase filed its first motion for summary judgment. Mot. [31]. Plaintiff failed to respond, and the Court granted summary judgment in favor of Chase. *See* Order [35]. Plaintiff then moved to reconsider or alter the judgment, stating that his failure to respond to Chase's motion for summary judgment was inadvertent. *See* Doc. [38]. By Order [43] dated July 15, 2013, the Court granted reconsideration and stated that Chase could re-file its motion, allowing Plaintiff a final opportunity to properly litigate this matter. On August 27, 2013, Chase filed a second motion for summary judgment on the counterclaim against Plaintiff. Mot. [44]. The motion has been fully briefed and is ripe for decision.

II

This Court has subject matter jurisdiction over Plaintiff's complaint under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, and supplemental jurisdiction over Chase's counterclaim under 28 U.S.C. § 1367. *See Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 464 (5th Cir. 2006). Moreover, Chase asserts that diversity of citizenship, 28 U.S.C. § 1332, exists as an additional basis for this Court's jurisdiction over the case. Federal law applies to Plaintiff's FCRA claims. Because the counterclaim is based on a credit card agreement, the Court must look to state contract law to evaluate the claims Chase asserts against Plaintiff.

A

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). When ruling on motions for summary judgment, district courts must review all evidence and draw all reasonable inferences in favor of the nonmoving party. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009) (citations omitted). In response to a summary judgment motion, the nonmoving party

cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). In the absence of proof, courts should not assume that the nonmoving party could have proved the necessary facts. *Paz*, 555 F.3d at 391. "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Chase argues that it is entitled to summary judgment on its counterclaim because Plaintiff breached its obligation under the Cardmember Agreement by failing to pay the account balance. Chase further argues that Plaintiff's claims should be dismissed in light of his contractual liability on the account. Although Chase no longer has a copy of the original credit card application, it has submitted a specimen copy of the Cardmember Agreement governing the credit card account. Def.'s Decl. [44-14]. The agreement designates Delaware state law as the governing law[4] and provides in relevant part:

> … Any use of your Card or Account confirms your acceptance of the terms and conditions of this Agreement.
>
> … [T]he words "you" and "your" refer to each person (jointly and severally if more than one) who has applied for the Account and any other person who has agreed to be responsible for the Account.
>
> … We may issue "Convenience Checks" to you that may be used to access your credit line. Use of a Convenience Check will [be treated] as a "Purchase" in the amount of your check.
>
> … You authorize us to pay and charge your Account for all Purchases and Cash Advances made or obtained by you or anyone you authorize to use your Card or Account. You promise to pay us for all of these Purchases and Cash Advances, plus any Finance Charges assessed on your Account and any other charges and fees which you may owe us under the terms of this Agreement. Each person who

---

[4] *See id.* at Exh. A ¶ Governing Law.

is included within the definition of the term "you", above, is responsible to pay the full amount owed on the Account. We may require that you pay the full amount owed without first asking the other person(s) to pay.

*Id*. at Exh. A. In the event of default or unauthorized usage, cardholders are advised:

**Default/Collection Costs.** Your Account will be in default and we may demand immediate payment of the entire amount you owe or without giving you prior notice if: (1) in any month we do not receive your Minimum Monthly Payment by the Payment Due Date; (2) you make Purchases or obtain Cash Advances in excess of your credit line; (3) you fail to comply with this Agreement; (4) there is a filing for your bankruptcy; (5) you die or become incapacitated; or (6) we believe in good faith that the payment or performance of your obligations under this Agreement is impaired for any other reason. As permitted by applicable law, you agree to this Agreement (including the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fee of such attorney and actual court costs.
…

**Liability for Unauthorized Use of Your Account.** If your Card or Convenience Checks are lost or stolen or if you are afraid someone may use your Account without your permission, you must notify us at once. You may be liable for that unauthorized use of your Account. You will not be liable for unauthorized use that occurs after you notify [us] …

*Id*.

In response to the motion, Plaintiff contends he is liable only for the debts he incurred on the credit card and he cannot be liable for his ex-wife's debt merely because cards were mailed to the marital address with an agreement enclosed. Plaintiff asserts he is not required to pay the full balance because he never made a promise in writing to pay the debt as required under Mississippi law to hold him liable for a third party's debt. Pl.'s Mem. Brief [50] at 3. Chase argues that Plaintiff's statute of frauds argument is misplaced because Delaware law governs the agreement[5] and further, statute of frauds is an affirmative defense that must be specifically pled.

---

[5] Although Chase makes this choice of law argument, it cites no Delaware law in its motion for summary judgment or supporting briefs.

Federal conflicts of law rules guide this Court's determination of the applicable state law to the Cardmember Agreement. *See In re Catfish Antitrust Litigation*, 908 F. Supp. 400, 411 (N.D. Miss. 1995) ("when this court's jurisdiction is based upon a federal question[,] … any applicable state law rules of decision are to be determined via application of federal conflicts of law rules") (citations omitted); *Jimenez v. Sun Life Assurance Co. of Canada*, 486 F. App'x 398, 406 (5th Cir. 2012) (stating that Fifth Circuit has held "we should apply federal common law choice of law principles when we exercise federal question jurisdiction over a case"); *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 2009) ("Federal law applies to the [forum selection/choice of law clause] enforceability determination."). Federal conflicts of law rules are found in the Restatement [Second] of Conflicts of Laws. *In re Catfish Antitrust Litigation*, 908 F. Supp. at 411; *Jimenez,* 486 F. App'x at 407. Section 187 of the Restatement provides that, when a contract includes a choice of law provision, the chosen state law will be applied unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (b) applying the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]" Restatement (Second) of Conflict of Laws § 187 (1971).

Delaware has a "substantial relationship" to the parties because it is where Chase's principal place of business is located.[6] *See* Notice of Removal [1] at 3 ("Chase is a national bank with its principal place of business in Delaware."); Compl. [2] at 1 ("Chase Bank USA, N.A.,

---

[6] Comment f to the Restatement (Second) Conflicts of Laws § 187 provides that the state chosen by the parties in a choice of law provision has a substantial relationship to the parties or contract when the state is "where one of the parties is domiciled or has his principal place of business." *See St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011) ("New York has a substantial relationship to the parties because plaintiff insurer American Home Insurance Company is a New York corporation.") (internal citation omitted).

credit card issuer on the above referenced account, a corporation organized and existing under the laws of Delaware …"). Further, the parties do not argue that applying Delaware law would violate the public policy of a state with a "materially greater interest" than Delaware. For these reasons, the Court finds that the choice of law provision in the Cardmember Agreement should be enforced, and Delaware law should be applied to the contractual issues in this case.

**B**

To prevail on a claim for breach of contract under Delaware law, Chase must establish: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to [Chase]." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citing *Winston v. Mandor*, 710 A.2d 835, 840 (Del. Ch. 1997)).

The parties do not challenge that there is a valid credit card agreement.[7] Instead, they dispute whether Plaintiff is in breach of his obligations under the Cardmember Agreement. Plaintiff admits not making any payments on the outstanding debt. However, he disputes whether he, as a joint accountholder or account user, can be held liable for the charges made by his ex-wife, the primary accountholder. Plaintiff's contention that he is merely an authorized user and not a joint accountholder is undermined by his admission that he was responsible for charges on the account during his marriage to his ex-wife and by the voluntary payments he made on the account before the convenience check was cashed. Moreover, Plaintiff stated during his deposition that he contacted Chase to close the account in 2006, which indicates he

---

[7] *See* Pl.'s Mem. Brief [50] at 3 ("Chase asserts this is a simple contract case and can be resolved on simple contract law. On this the parties agree, this is a matter of: offer, acceptance and consideration; i.e., [t]he account was opened, Chase opened a line of credit, David owes for any draws on the line of credit made by him."). Further, absence of the original application and/or agreement is not fatal to Chase's counterclaim. *Grasso v. First USA Bank*, 713 A.2d 304, 308 (Del. Super. Ct. 1998) (stating that since parties agreed to wording of key provisions, "absence of the original solicitation … is not a procedural bar"). "Use of the credit card would constitute acceptance of the terms in the Agreement." *Id*. at 309.

believed he was and/or acted as a joint accountholder and not just a user lacking decision-making authority over the account.

Plaintiff fails to submit law directly supporting his contention of no liability for the debts of a joint accountholder. Rather, he relies on the Fifth Circuit's ruling in *AT&T Universal Card Service v. Mercer (In re Mercer)*, to support his argument that he is not responsible for the debt at issue. *See* 246 F.3d 391, 404 (5th Cir. 2001). In that case, the Fifth Circuit determined that credit card use represents the user's intent to pay. *Id.* The *Mercer* court stated that "each card-use forms a unilateral contract: the holder '*promises* to repay the debt … and the … issuer *performs* by reimbursing the merchant who … accepted the … card in payment.'" *Id.* at 406 (citations omitted) (emphases in original). Relying on this ruling, Plaintiff contends he is not liable because he did not cash the convenience check.

Unlike *Mercer*, this case involves a joint credit account governed by a Cardmember Agreement holding both accountholders liable for charges to their credit card. Pursuant to *Mercer*, usage of a credit card represents the intent to pay each time the card is used. 246 F.3d at at 404. Applying that standard to the present case, Plaintiff is liable for the convenience check drafted on the Chase account because *Mercer* does not distinguish between charges made by joint accountholders. Further, the Delaware Superior Court has stated that card use constitutes acceptance of terms in a credit card agreement. *Grasso*, 713 A.2d at 308-09 ("Use of the credit card would constitute acceptance of the terms in the Agreement.").

The explicit language in the agreement makes Plaintiff responsible for the balance on the account and shows that he was in breach when he failed to pay the debt. The Cardmember Agreement provides that each party "is responsible to pay the full amount owed" and that Chase may require one party to "pay the full amount owed without first asking the other person(s) to

pay." Def.'s Decl. [44-14] at Exh. A ¶ Obligations on Your Account. Considering the *Mercer* ruling on which Plaintiff relies, his ex-wife represented intent to pay when she cashed the convenience check. As a joint accountholder, Plaintiff is liable for the debt. *See id.* ("You authorize us to pay and charge your Account for all Purchases and Cash Advances made or obtained by you or anyone you authorize to use your Card or Account. You promise to pay us for all these Purchases and Cash Advances …"). Chase suffered damages from Plaintiff's failure to pay; therefore, Chase acted within its authority under the agreement when it initiated collection attempts against him.

Plaintiff also attempts to argue that he is not liable for the account balance because he did not make a written promise to pay his ex-wife's debt. This argument, however, is without merit. The Delaware statute of frauds bars enforceability of agreements that cannot be performed within one year and contracts to loan money or to grant or extend credit in an amount greater than $100,000 unless they are in writing. *See* 6 Del. C. § 2714. The credit card balance on the Chase account in this case is less than $100,000.00. Moreover, payment of the debt could have been made within one year. *See Olson v. Halvorsen*, 986 A.2d 1150, 1159 (Del. 2009) ("Only if the parties cannot possibly perform the agreement within one year does the statute of frauds apply and require a writing, signed by the charged party.") (citation omitted). Thus, the statute of frauds is inapplicable, and Plaintiff's argument that he did not make a written promise to pay the credit card debt at issue must fail.

In light of the above analysis, Chase has established breach of contract under Delaware law. It has proved existence of a contract (i.e., the Cardmember Agreement), breach of Plaintiff's obligation to repay under the contract, and resulting damages from the breach.

Therefore, Chase is entitled to summary judgment on its claim for breach of the Cardmember Agreement, and Plaintiff's claims should be dismissed. *See VLIW Tech.*, 840 A.2d at 612.

## C

In addition to seeking payment of the credit card balance, Chase seeks attorney's fees in the amount of $10,021.25. The Cardmember Agreement provides that, in the event of default and the account is referred to "an attorney who is not our regularly salaried employee, you agree to pay the reasonable fee of such attorney and actual court costs." Def.'s Decl. [44-14] at Exh. A ¶ Default/Collection Costs. Plaintiff does not respond to or otherwise oppose Chase's argument regarding attorney's fees. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *see also In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010) (stating that court "is not to create arguments for adjudication—but rather, … adjudicate those arguments with which [it is] presented"). Although Plaintiff appears to waive this issue, the Cardmember Agreement only requires him to pay "reasonable" attorney's fees. Here, Chase has not provided the Court with sufficient information to determine whether the requested fees are reasonable. As such, the Court directs Chase to provide an itemized summary of its attorney's fees, detailing the nature of the work completed, the time spent on each task, and the hourly rate for each billing attorney.

## III

Based on the above analysis, the Court finds that the Motion for Summary Judgment [44] is GRANTED IN PART and DENIED IN PART. Chase is awarded a judgment against Plaintiff for the balance of the credit card account in the amount of $30,063.76. The request for attorney's fees, however, is denied without prejudice at this time. Additional information is

required for the Court to determine whether the requested fees are reasonable. Chase is directed to provide itemized cost information as set forth in this order within fourteen (14) days.

SO ORDERED, this the 5th day of September 2014.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**